Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BOURBAKI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ISORAY, INC., DWIGHT BABCOCK, AND BRIEN RAGLE,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Joseph Bourbaki ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding IsoRay, Inc. ("IsoRay," or the "Company"), securities analysts' reports and advisories about the Company, and

- 1 -

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of IsoRay between May 20, 2015 and May 21, 2015, inclusive, (the "Class Period") seeking to recover compensable damages caused by Defendants' violations of federal securities laws.

2. During the Class Period, Defendants issued materially false and misleading statements and omitted to state material facts that rendered their affirmative statements misleading as they related to the Company's financial performance, business prospects, and true financial condition.

## JURISDICTION AND VENUE

3. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

5. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) and IsoRay conducts business within this district.

6. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## PARTIES

7. Plaintiff Joseph Bourbaki, as set forth in the accompanying certification, incorporated by reference herein, purchased IsoRay securities at artificially inflated prices during the Class Period and has been damaged thereby.

8. Defendant IsoRay is a Minnesota Corporation, with its principal executive offices in Richland, Washington. IsoRay develops, manufactures, and sells isotope-based medical products and devices for the treatment of cancer and other malignant diseases in the United States. The company produces Proxcelan Cesium-131 brachytherapy seeds for the treatment of prostate, lung, head and neck, colorectal, brain, pelvic/abdominal, and gynecological cancers, as well as ocular melanoma. IsoRay securities are actively traded on the New York Stock Exchange ("NYSE") under the ticker "ISR."

9. Defendant Dwight Babcock ("Babcock") has been the Company's Chief Executive Officer and Chairman at all relevant times.

10. Defendant Brien Ragle ("Ragle") has been the Company's Chief Financial Officer at all relevant times.

11. Babcock and Ragle are herein referred to collectively as the "Individual Defendants."

12. Babcock, Ragle, and IsoRay are herein referred to collectively as "Defendants."

13. During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of IsoRay and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

14.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.  Because of their Board membership and/or executive and managerial positions with IsoRay, each of the Individual Defendants had access to the adverse undisclosed information about IsoRay's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about IsoRay and its business issued or adopted by the Company materially false and misleading.

## SUBSTANTIVE ALLEGATIONS

15.    The Class Period begins on May 20, 2015 when IsoRay issued a press release touting the on-line publication of the first major peer reviewed study showing improved results using IsoRay's Cesium-131 seeds in the treatment of lung cancer (the "May 20th Press Release"). The press release states in relevant part:

> ***IsoRay's Cesium-131 Lung Cancer Treatment Reports 96% Success in Local Control and 100% Survival at 5 Years in High Risk Patients in Newly Published Report***
>
> ***Cesium-131's Outstanding Lung Cancer Results Take On Other Treatment Forms Including Stereotactic Radiation***
>
> Richland, WA (May 20, 2015) – – IsoRay, Inc. (NYSE MKT: ISR), a medical technology company and innovator in seed brachytherapy and medical radioisotope applications, today announced the on-line publication of the first major peer reviewed study showing improved results using IsoRay's Cesium-131 seeds in the treatment of lung cancer.

- 4 -

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

***IsoRay CEO Dwight Babcock commented, "We are extremely excited to have our Cesium-131 isotope seeds and mesh used in the treatment of non-small cell lung cancers with such outstanding patient outcomes.*** Notable physicians, including the authors of this study, are seeking better solutions and outcomes for their patients. We are continuing to develop our product offerings internally with support from these industry leaders. With every success that has been reported, the medical community is rapidly becoming aware of the innovative alternative our Cesium-131 products offer to cancer patients."

Dr. Bhupesh Parashar MD, of Weill Cornel Medical College, is lead author of the publication titled: 'Analysis of Stereotactic Radiation vs. Wedge Resection vs Wedge Resection Plus Cesium-131 Brachytherapy in Early-stage Lung Cancer'. The study noted that the survival rate at 5 years was exceptional for the Cesium-131 group, which included many high risk patients, and Cesium-131 added no noticeable side effects. Treatment with Cesium-131 was performed at the time of the surgery as a single treatment, in contrast to another treatment option, external radiation, which requires numerous hospital visits. To review the report as published online as of May 19, 2015, please follow the link provided here:
http://www.sciencedirect.com/science/article/pii/S1538472115004559

Babcock said, "Published studies are the final step to commercialization as leaders in the medical arena recognize the important need for a new powerful weapon in the battle against cancer. This latest publication, in conjunction with other recent published reports on metastatic brain cancer and gynecological cancers, are proving Cesium-131's time is now. Not only does Cesium-131 work but it is a single application providing improved quality of life for the patient."

IsoRay's various products, including Cesium-131 seeds, sutured seeds, stranded mesh and the GliaSite® radiation therapy system, give physicians the ability to directly place a specified dosage of radiation in areas where cancer is most likely to remain after completion of a tumor removal or by placing seeds within the prostate. The ability to precisely place a specified dose of radiation means there is less likelihood for damage to occur to healthy surrounding tissue compared to other alternative treatments. IsoRay's cancer fighting products diminish the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

ability of the tumor to recur, resulting in important benefits for patients in longevity as well as quality of life.

IsoRay is the exclusive manufacturer of Cesium-131. The pioneering brachytherapy therapy is one of the most significant advances in internal radiation therapy in 20 years. Cesium-131 allows for the precise treatment of many different cancers because of its unrivaled blend of high energy and its 9.7 day half-life (its unequaled speed in giving off therapeutic radiation).

In addition to its CMS codes, Cesium-131 is FDA-cleared and holds a CE mark for international sales in seed form for the treatment of brain cancer, prostate cancer, lung cancer, ocular melanoma cancer, colorectal cancer, gynecologic cancer, head and neck cancer and other cancers throughout the body. The treatment can be deployed using several delivery methods including single seed applicators, implantable strands and seed sutured mesh. IsoRay also sells several new implantable devices, including the GliaSite® radiation therapy system.

(Emphasis added).

### THE TRUTH EMERGES

16. On May 21, 2015, TheStreet.com published an article on IsoRay asserting that the Company selectively edited findings from a published study in the May 20th Press Release to make its Cesium-131 product seem better than it really is. The articles states in relevant part:

> ***IsoRay Takes Liberties With Lung Cancer Study Results to Prop Up Stock Price***
>
> RICHLAND, Wash. (TheStreet) -- IsoRay (ISR - Get Report) does a poor job selling radioactive "seeds" for use in cancer radiation therapy. To make up for the inability to deliver revenue growth -- and prop up its stock price -- ***IsoRay issues a lot of promotional press releases, some of which take liberties with clinical data using clever, selective editing.***
>
> ***Take Wednesday's IsoRay announcement about the publication of a study involving use of the company's seed brachytherapy product***

> *Cesium-131 to treat patients with early-stage lung cancer after surgery. The press release headline reads, "IsoRay's Cesium-131 Lung Cancer Treatment Reports 96% Success in Local Control and 100% Survival at 5 Years in High Risk Patients in Newly Published Report."*
>
> *100% survival! That's an attention grabber. The IsoRay press release about the study goes on to describe the Cesium-131 results as "outstanding." Twice.*
>
> IsoRay shares almost doubled in price to $3.12 Wednesday. The stock is up another 3% Thursday.
>
> Few investors are reading the actual study involving Cesium-131 published in the medical journal Brachytherapy. If they read the study -- and I did -- you'd see IsoRay is lazy with the facts.
>
> *Yes, 96% of lung cancer patients demonstrated "local control" (meaning control of tumor in the lung) following surgery plus treatment with Cesium-131. But two other groups of lung cancer patients in the Brachytherapy study who had either surgery alone or a different form of radiation therapy demonstrated statistically equivalent rates of local control. The study authors note there were no differences in local control rates between the groups of lung cancer patients.*
>
> *IsoRay also plays rope-a-dope with the five-year overall survival rate of 100% for Cesium-131 patients. The company fails to mention the comparable five-year survival rate for patients undergoing surgery alone is 98% -- a clinically meaningless difference of two percentage points. Moreover, the survival analysis is severely limited because nearly every patient in the study is censored, meaning they're lost to follow up. The study does not conclude that treatment with Cesium-131 leads to longer survival.*
>
> *In their conclusion, the study authors do not endorse IsoRay's Cesium-131 or call the results "outstanding." They conclude that early-stage lung cancer patients may benefit from surgery plus Cesium-131 or an the alternative form of radiation therapy compared to surgery alone.*

- 7 -

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

> Why would IsoRay provide selectively edited findings from a published which make its product seem better than it really is?
>
> This chart of IsoRay's revenue growth for the past three years, dating back to when the company started selling Cesium-131, answers the question well.

(Emphasis added).

17. On this adverse news, shares of IsoRay fell $1.10 per share or over 35% to close at $2.02 per share on May 21, 2015, damaging investors.

## NO SAFE HARBOR

18. The statutory safe harbor provided for certain forward-looking statements does not apply to any of the false statements alleged in this Complaint. None of the statements alleged herein are "forward-looking" statements and no such statement was identified as a "forward looking statement" when made. Rather, the statements alleged herein to be false and misleading all relate to facts and conditions existing at the time the statements were made. Moreover, cautionary statements, if any, did not identify important factors that could cause actual results to differ materially from those in any forward-looking statements.

19. In the alternative, to the extent that the statutory safe harbor does apply to any statement pleaded herein which is deemed to be forward-looking, the Individual Defendants are liable for such false forward-looking statements because at the time each such statement was made, the speaker actually knew and/or recklessly disregarded the fact that such forward-looking statements were materially false or misleading and/or omitted facts necessary to make statements previously made not materially false and misleading, and/or that each such statement was authorized and/or approved by a director and/or executive officer of IsoRay who actually knew or recklessly disregarded the fact that each such statement was false and/or misleading when made. None of the historic or present tense statements made by the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Individual Defendants was an assumption underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such an assumption underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Individual Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of IsoRay during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, IsoRay's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by IsoRay or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

22. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

23. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

24. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of IsoRay; and

    (c) to what extent the members of the Class have sustained damages and the proper measure of damages.

25. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**LOSS CAUSATION/ECONOMIC LOSS**

26. During the Class Period, the Individual Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated IsoRay's stock price and operated as a fraud or deceit on purchasers of IsoRay stock by misrepresenting the Company's business. Once the Individual Defendants' misrepresentations and fraudulent conduct were disclosed to the market, IsoRay's stock price reacted negatively as the artificial inflation was removed from it. As a result of their purchases of IsoRay stock during the Class Period, Plaintiff and other members of the Class suffered economic loss.

27. The Individual Defendants' false and misleading statements had the intended effect and caused IsoRay stock to trade at artificially inflated levels throughout the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

28. As investors and the market became aware of IsoRay's prior misstatements and omissions and that IsoRay's actual financial condition and business prospects were, in fact, not as represented, IsoRay's stock price reacted negatively, damaging investors.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

29. At all relevant times, the market for IsoRay's common stock was an efficient market for the following reasons, among others:

(a) IsoRay is currently listed and actively traded on the NYSE, a highly efficient and automated market;

(b) During the class period, on average, several hundreds of thousands of shares of IsoRay stock were traded on a weekly basis, demonstrating a very active and broad market for IsoRay and permitting a very strong presumption of an efficient market;

(c) As a regulated issuer, IsoRay filed periodic public reports with the SEC;

(d) IsoRay regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e) IsoRay was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f) Numerous FINRA member firms were active market-makers in IsoRay stock at all times during the Class Period; and

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(g) Unexpected material news about IsoRay was rapidly reflected and incorporated into the Company's stock price during the Class Period.

30. As a result of the foregoing, the market for IsoRay's common stock promptly digested current information regarding IsoRay from all publicly available sources and reflected such information in IsoRay's stock price. Under these circumstances, all purchasers of IsoRay's common stock during the Class Period suffered similar injury through their purchase of IsoRay's common stock at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM

### Violation of Section 10(b) Of The Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

31. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32. This claim is brought against IsoRay and all of the Individual Defendants.

33. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase IsoRay's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

34. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for IsoRay's common stock in violation of Section 10(b) of the Exchange Act and Rule

10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

35. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of IsoRay as specified herein.

36. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of IsoRay's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about IsoRay and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of IsoRay's common stock during the Class Period.

37. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's

1  management team, internal reports and other data and information about the
2  Company's finances, operations, and sales at all relevant times; and (4) each of these
3  defendants was aware of the Company's dissemination of information to the
4  investing public which they knew or recklessly disregarded was materially false and
5  misleading.

6      38.    Defendants had actual knowledge of the misrepresentations and
7  omissions of material facts set forth herein, or acted with reckless disregard for the
8  truth in that they failed to ascertain and to disclose such facts, even though such facts
9  were available to them. Such Defendants' material misrepresentations and/or
10 omissions were done knowingly or recklessly and for the purpose and effect of
11 concealing IsoRay's operating condition and future business prospects from the
12 investing public and supporting the artificially inflated price of its common stock. As
13 demonstrated by Defendants' overstatements and misstatements of the Company's
14 financial condition throughout the Class Period, Defendants, if they did not have
15 actual knowledge of the misrepresentations and omissions alleged, were reckless in
16 failing to obtain such knowledge by deliberately refraining from taking those steps
17 necessary to discover whether those statements were false or misleading.

18      39.    As a result of the dissemination of the materially false and misleading
19 information and failure to disclose material facts, as set forth above, the market price
20 of IsoRay's common stock was artificially inflated during the Class Period. In
21 ignorance of the fact that market prices of IsoRay's publicly-traded common stock
22 were artificially inflated, and relying directly or indirectly on the false and misleading
23 statements made by Defendants, or upon the integrity of the market in which the
24 common stock trades, and/or on the absence of material adverse information that was
25 known to or recklessly disregarded by Defendants but not disclosed in public
26 statements by Defendants during the Class Period, Plaintiff and the other members of
27 the Class acquired IsoRay common stock during the Class Period at artificially high
28 prices and were or will be damaged thereby.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

40. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding IsoRay's financial results, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their IsoRay common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

41. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

42. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

43. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of IsoRay within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to

influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

46. In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

47. As set forth above, IsoRay and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

48. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

49. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 22, 2015　　　　　　　　　Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS